S. H. OVERTON *v.* L. LEWIS *et al.*\*

(*Knoxville.* September Term, 1925.)

1. **GIFTS.** Parol gift of automobile held not shown.

One purchasing an automobile at suggestion of one with whom he had had immoral relations, and leaving it in garage owned by her husband, with intention of learning to drive it, and never surrendering dominion or control over car to her or her husband, *held* not to have executed parol gift of car. (*Post, p.* 505.)

Cases cited and approved: Shugart v. Shugart, 111 Tenn., 179; Trowell v. Carraway, 57 Tenn., 104; McEwen v. Troost, 33 Tenn., 185; Sheegot v. Perkins, 63 Tenn., 273.

2. **EQUITY.** Defense that complainant did not come into court with clean hands need not be pleaded.

In equity suit, the defense that complainant did not come into court with clean hands need not be specifically pleaded, notwithstanding Shannon's Code, section 6125. (*Post, pp.* 505-507.)

Cases cited and approved: Jordan v. Jordan, 145 Tenn., 378; Wilson v. Schaefer, 107 Tenn., 328; State ex rel. v. Vanderbilt University, 129 Tenn., 329; Gilreath v. Gilliland, 95 Tenn., 386; Lenoir v. Mining Co., 88 Tenn., 168.

Case cited and distinguished: Medicine Co. v. Mansfield Drug Co., 93 Tenn., 84.

Code cited and construed: Sec. 6125.

3. **ACTION.** Purchaser of car, which he left with one with whom he had had immoral relations, entitled to replevy it.

One purchasing a car at suggestion of one with whom he had had immoral relations, and leaving it in her garage, under agreement

Overton v. Lewis.

that her husband teach him to drive it, *held* entitled to replevy car, as against contention that complainant did not come into court with clean hands; car not having been used or connected with the improper or immoral conduct of the parties. (*Post, pp.* 507-511.)

Cases cited and approved: Swan v. Castleman, 63 Tenn., 257; Johnson v. Cooper, 10 Tenn., 524; Goodwin v. Hunt, 11 Tenn., 124; Ansley v. Wilson, 50 Ga., 418; West v. Washburn, 153 App. Div., 460; Kinner v. Lakeshore & M. S. R. Co., 23 Ohio Cir. Ct. R., 300; Upchurch v. Anderson, 52 S. W., 917; Neubeck v. Neubeck, 94 N. J. Eq., 167.

*Headnotes 1. Gifts, 28 C. J., Section 23; 2. Equity, 21 C. J., Section 171; 3. Equity, 21 C. J., Section 173.

## FROM KNOX.

Appeal from the Chancery Court of Knox County, to the Court of Civil Appeals, and by *certiorari* to the Court of Civil Appeals from the Supreme Court.—Hon. Chas. Hays Brown, Chancellor.

S. E. Hodges, for Overton.

Sims & Drinnen, for Lewis and others.

Mr. Powers, Special Justice, delivered the opinion of the Court.

Petitioner, Overton, filed this suit in the chancery court for replevin of an automobile, alleging in his bill that he was the owner of it, from the appellants D. Lewis and Eva Lewis, who, he alleges, unlawfully detained it. An-

swering, appellants denied petitioner was the owner or had any interest in the automobile, or the right to its possession; denied that they unlawfully detained it; averred that the title to the car was in Eva Lewis, and she was entitled to the possession thereof. The chancellor decreed that the allegations of the bill were sustained by the proof, and gave the relief sought. Appeal was prosecuted to the court of appeals, where the first assignment of the appellants was overruled, the court holding there was no absolute gift from petitioner to appellant. Eva Lewis, and to this extent concurring with the chancellor. But the court of appeals sustained the second assignment of error made by appellants there, to the effect that the chancellor should have dismissed the bill because the petitioner *did not "come into a court of equity with clean hands,"* and reversed his decree. The cause is before us on petition for *certiorari,* which has been granted and has been argued.

Petitioner assigns as error this action of the court of appeals in dismissing his suit upon that ground, insisting that the immoral conduct between the parties has no connection with the subject-matter of this suit, and therefore that he should not be repelled from the relief sought, by the operation of the principles of this maxim. The facts, so far as necessary to be stated, are that there had existed between the parties, petitioner and appellant Eva Lewis, an immoral relationship, which began in June, 1922, when petitioner met said appellant on the street in Knoxville; she approaching him and inviting him to her apartment, showing him a divorce decree from her former husband, petitioner and his wife also being separated. Petitioner up until the time of the trial in

December, 1924, bought during this period, and did give said appellant, he estimates about $1,500, and she, about $3,000 worth of presents, clothing, and furniture for her house, but nearly all of this was before she married Lewis, and all before petitioner knew she had married him, except $10 or $12. Petitioner did not know of D. Lewis until February, 1923, at which time she informed him they had been married. She testifies she led the husband to believe the money for these gifts came from her father, and he knew nothing about the truth of their source until later; but the husband is active aiding the wife in defending this suit, testified in her behalf, and evidently knew of this relationship long before the suit was instituted. Petitioner and appellant Eva, shortly before this suit, had a conversation about the automobile, and they two went to purchase a Durant, according to a cut they had from some publication, about two weeks before a car was gotten. She says he promised her a car, and her husband says he heard her ask petitioner to buy a car, and that petitioner stated then he was not going to give it to her. It was agreed that D. Lewis would teach Overton how to drive it, and they would enlarge Lewis' garage to make room for it; the agent having ordered the Durant. While Lewis and Overton were working on the garage, the agent came to Lewis' house, the address given the agent, requesting that they come to the place of the agency and complete the purchase. It was understood Lewis, who was in the transfer business, was to drive the car, and Overton, who is a leverman on the railroad, was to be taught how to drive, and was to take Eva Lewis to her home in Maryville, when she wanted to go. (This agreement being made with her and

her husband by petitioner before the Durant was ordered.)    Later petition and Eva Lewis then went to the agency, and there petitioner refused to buy the Durant, but bought a Star, which was cheaper, paying $500 cash, and executing his own notes, with title retained, for the balance of $315; and then D. Lewis was telephoned for, and he came and drove the car home.    Evidently with the purpose of showing a consideration, she attempts to show that she discharged certain boarders, and that Overton was to take a room at her house.    But the boarders do not support her testimony, having left before this car subject arose.    Relationship between husband and wife is strained, but they have not separated.

A day or two after the car was delivered at D. Lewis' home, petitioner went there to have Lewis teach him how to drive, and found him sick in bed.    He returned for the same purpose and with the same result.    Petitioner returned the third time with a driver, and then it was that Mrs. Lewis declined to let him have the keys to the car, and this suit is the next step in the story. There was no use of this car by petitioner for immoral purposes, there was no gift of it to appellant Eva Lewis, and there is nothing in this automobile transaction connecting it directlly with the guilt of these parties, although their past relationship was unclean and immoral. The woman and her husband are colluding now for the purpose of retaining this automobile that belongs to the petitioner.    As we see these facts, petitioner's property right therein and his misconduct with the appellant Eva Lewis are not connected, and this brings us to a consideration of the law applicable to the case.

Overton v. Lewis.

1. Appellants' counsel, while not assigning errors to the decree of the court of appeals, in his brief still takes the position that there was a gift of this car from the petitioner to appellant Eva Lewis, and relies upon authorities to support that insistence, notwithstanding the chancellor and court of appeals have concurred in holding to the contrary. There was no valid parol gift of this automobile. It was left with appellants in D. Lewis' garage by the petitioner with the intention and purposes aforesaid. Dominion and control of the car was never surrendered to Eva Lewis, nor her husband. Petitioner never recognized her right to this car as a gift, and a gift was never executed. The automobile was there as a mere deposit. *Shugart* v. *Shugart,* 111 Tenn., 179, at page 184, 76 S. W., 821, 102 Am. St. Rep., 777.

Here there was no such intention as was found by the court to constitute a gift in the case of *Trowell* v. *Carraway,* 10 Heis., 104, at page 113. There was never a complete dominion and control given to the appellant Eva Lewis, and there was no deed or writing as there was in the case of *McEwen* v. *Troost,* 1 Sneed, 185, at pages 191, 192, and 193. A delivery of a key, "where all other elements of a valid gift concur," and where the absolute intention of the donor appeared to be to part with his dominion over the property, was held to be sufficient evidence of a gift in *Sheegog* v. *Perkins,* 4 Baxt., 273, at page 281.

These authorities are not applicable to the facts of the present case, and we therefore approve the holding of both the lower courts to the effect that there was no gift.

2. But the petitioner insists that, inasmuch as the appellants, in their answer, averred only that Eva Lewis

had the title to the car and was entitled to the possession of it, and as this was the only defense raised by them, and the only issue upon which the proof was taken, the court of appeals erred in not holding that this pleading did not give notice to the opposite party what matters of fact and of law the pleader intended to submit to the court, and he should not, in the appellate court, for the first time, be entitled to rely upon the defense that petitioner did not come into court with clean hands, citing Gibson's Suit in Chancery (2d Ed.), 406, where it is said: "As to these matters and none others, proof must be made, if they are disputed; and on these and none others, a decree must be based; if proof is made as to other matters, such proof is impertinent; and if a decree is based on other matters, to that extent it is *coram non judice* and void,"—and also section 358 of Gibson (2d Ed.), to the same effect, that a defendant must be careful in answering clearly to specify any and all defenses he intends to rely upon, whether matters of law, or matters of fact, and these must be set clearly and unambiguously. This is true, generally speaking. And section 6125 of Shannon's Code provides:

"The answer should, in like manner, contain a clear and orderly statement of the facts on which the defense is founded, without prolixity or repetition, and with a prayer of dismissal or counter relief, according to the nature of the case." Shannon's Code, sec. 6125.

"It is an elementary principle that nothing is properly before the court of chancery for its determination except what is submitted to it in the pleadings, and that an adjudication outside of the scope of the pleadings is void." *Jordan* v. *Jordan,* 145 Tenn., 378, at page 430, 239 S.

W., 423, 438; *Wilson* v. *Schaefer,* 107 Tenn., 328, 64 S. W., 208; *State ex rel.* v. *Vanderbilt University,* 129 Tenn., 329, 164 S. W., 1151; *Gilreath* v. *Gilliland,* 95 Tenn., 386, 32 S. W., 250.

However, it is also well settled and a fundamental principle of law that whoever applies to a court of equity for relief must do so with clean hands and apparently clear conscience, and that such matter of defense will be raised by the court *sua sponte.*

"The unconscionable character of the transaction between the parties need not be pleaded by the defendant." 21 C. J., p. 186, section 171, numerous cases cited.

This has also been held by this court in the case of *Simmons Medicine Co.* v. *Mansfield Drug Co.,* 93 Tenn., 84, at page 99, 23 S. W., 165, 169. There, Special Judge M. M. NEIL said: "It is not, strictly speaking, a defense at all, but rather an interposition by the court in behalf of the public, to discourage fraud and wrong upon the public."

And see *Lenoir* v. *Mining Co.,* 88 Tenn., 168, 14 S. W., 378. We do not depart from the holdings of the court in those cases; this defense does not have to be specially pleaded.

3. This leaves then, for determination, the question of whether or not the petitioner is repelled, under the facts of this case, by his misconduct from obtaining the relief he seeks, and which he is entitled to, unless he is so repelled. The following authorities, we think, are conclusive of this question:

"A party who seeks to set aside a transaction on the ground of fraud, must himself be free from any participation in the fraud, if he desires any relief from a court

of equity. Of course, this only applies to the particular transaction under consideration, for the court will not go outside of the case, for the purpose of examining the conduct of the complainant on other matters, or questioning his general character for fair dealing.'' Bispham's Pr. of Eq., section 42, cited with approval in *Swan* v. *Castleman,* 4 Baxt., 257, at page 269.

Exceptions to this rule have been made in gaming contracts, where it is held it is to the interest of public policy to allow a complainant to recover, even though he himself was guilty of violating a statute; and relief also has been granted against usurious contracts. *Johnson* v. *Cooper* (gaming), 2 Yerg., 524, 24 Am. Dec., 502 (the court granting relief to a *particeps criminis,* and denying the application of the said maxim, because in contravention of the policy of a public statute). 2 Yerg., 530.

In discussing this maxim, Gibson in his Suits in Chancery (2d Ed.), section 42, uses the following language: ''But the operation of the maxim is confined to misconduct connected with the particular matter in litigation, and does not extend to any misconduct, however gross, which is unconnected therewith, and with which the defendant is not concerned. Under the operation of this maxim, the complainant must show that the transaction from which his claim arises is fair and just, that there is nothing unconscientious in his conduct relative thereto, and that the relief he seeks is equitable, and is not harsh or oppressive on the defendant.'' Gibson's Suits in Chancery (2d Ed.), section 42.

In the language of Mr. Justice GREEN, in a case decided in 1832, this court held: ''But if, in the establishment of a fair, clear, and honest right, a complainant in relation

Overton v. Lewis.

to some of his proof may be guilty of misconduct, independently of which there may be unexceptionable evidence abundantly sufficient to establish the fairness and honesty of his claim, the court will not, on account of such misconduct, refuse relief." *Goodwin* v. *Hunt*, 3 Yerg., 124, at page 126.

Generally this maxim is applied to cases other than of the nature involved in the case at bar: "The maxim applies generally to parties seeking affirmative equitable relief, whether by way of specific performance of contract, specific reparation or prevention of torts, reformation, or rescission." Clark's Tenn. Ed. on Eq., section 30.

"The inequity which deprives a suitor of a right to justice in a court of equity is not general iniquitous conduct, unconnected with the act of the defendant which the complaining party states as his ground or cause of action, but it must be evil practice or wrong conduct in the particular matter or transaction in respect to which judicial protection or redress is sought. . . . It does not repel all sinners from courts of equity, nor does it apply to every unconscientious act or inequitable conduct on the part of the complainants." 10 R. C. L., section 140, and cases cited.

"The misconduct which falls within this maxim must have infected the cause of action, so that to entertain it would be violative of conscience. It must relate directly to the very transaction concerning which complaint is made, and not merely the general morals or conduct of the person seeking relief." 21 C. J., p. 187, section 173, and cases cited.

"The inquiry must be confined to the particular mat-

ter before the court, and the court will not deny him relief, because in other matters his conduct is not blameless.'' Beach Eq. Jur., section 16.

"The rule that a complainant must come into equity with clean hands does not go so far as to prohibit a court of equity from giving its aid to a bad or a faithless man. The dirt upon his hands must be his bad conduct in the transaction complained. of.'' *Ansley* v. *Wilson* (1873), 50 Ga., 418.

"While equity does not employ itself in settling quarrels amongst rogues, still a rogue may have a clean cause of action, and it is with reference to the cause of action which he produces that the maxim of clean hands applies.'' *West* v. *Washburn* (1912), 153 App. Div., 460, 138 N. Y. S., 230.

"A court of equity will not shut its doors to the wicked and to those who are guilty of violation of law, simply because of the moral state of the person, but will confine the maxim to where the wrongdoing has directly affected the particular matter under consideration by the court.'' *Kinner* v. *Lakeshore & M. S. R. Co.* (1902), 23 Ohio Cir. Ct. R., 300.

Numerous cases holding that "it is not every willful and reprehensible act that will preclude a litigant in a court of equity from obtaining the relief prayed, but such conduct, under the principle involved in this maxim, *must bear an immediate relation to the subject-matter of the suit,* and in some measure affect the equitable relations subsisting between the parties to the litigation and arising out of the transaction'' will be found under a note in 4 A. L. R., at page 65 showing that this exception to the rule is followed, not only in the United States courts,

but in the courts of fifteen other States of the Union, and also has been followed in England.

See, also, to the same effect, *Upchurch* v. *Anderson* (Tenn. Ch. App., 1898), 52 S. W., 917, where the court held that equity would not grant a complainant relief, who comes with an improper motive in the institution of the suit; but relief will not be denied where it does not appear that the suit was prosecuted in furtherance of the improper motive.

In the case of *Neubeck* v. *Neubeck* (1922), 94 N. J. Eq., 167, 119 A., 26, 27 A. L. R., 175, the wife was living immorally away from her husband, in adultery, he collecting rents from her property for her, and yet the supreme court of New Jersey permitted her to recover and hold the husband to account for rents collected from her leased property, and held that her immoral conduct had nothing to do with the particular transaction involved in the suit.

We hold, therefore, that this exception to the rule is well established.

We do not find that this particular transaction, the subject-matter of this suit, was tainted with the immoral conduct of the petitioner. This car belongs to the petitioner, was not used for immoral purposes, and there is no connection between the petitioner's property right in it and his other misconduct with the appellant Eva Lewis.

It results that the decree of the court of appeals must be reversed, and the decree of the chancellor will be affirmed. However, under the facts of this case, it is deemed proper to tax the petitioner with the costs of the cause, which accordingly will be done.

All concur.