NOLEN *et al. v.* WITHERSPOON *et al.*

*(Nashville,* December Term, 1944.)

Opinion filed March 3, 1945.

Rehearing denied May 5, 1945.

334

PAUL B. THOMPSON and LITTELL RUST, both of Nashville, for Nolen, complainant.

K. HARLAN DODSON, JR., of Nashville, for Witherspoon, defendant.

ARMISTEAD, WALLER, DAVIS & LANSDEN, of Nashville, for R. E. Fort and Third Nat. Bank, executor, defendant.

JUDSON HARWOOD and BASS, BERRY & SIMS, all of Nashville, for Nashville Trust Co., defendant and cross-complainant.

MR. JUSTICE CHAMBLISS delivered the opinion of the Court.

In June, 1924, Hardin H. Nolen, Dr. Rufus H. Fort and V. I. Witherspoon conveyed to the then American, now Nashville, Trust Company, a tract of land in Davidson County, near Nashville, which they owned in common, in equal parts, with a view to facilitating its subdivision into lots for sale. Extensive powers of control and disposition were vested in the Trust Company. Sales and other transactions were had, but much of the land remains unsold and the trust has not been wound up.

Following the death of Mr. Nolen, his wife, as one of his heirs, some years ago filed the original bill in this cause for an accounting. Later Mr. Witherspoon, and later Dr. Fort, died. The decree of the Chancellor, following

a reference to the Master, was appealed from and his decree having been affirmed by the Court of Appeals, a petition for *certiorari* was granted and argument has been heard.

Two questions are presented, (1) whether the lower Courts erred in refusing to allow interest upon advancements made by the Trust Company from time to time in its administration of the trust; and (2) whether all of the monies due the Trust Company are properly chargeable to the partnership as a whole, as contended by the Trust Company, or whether portions thereof are chargeable to the individual beneficiaries only, as held by the lower Courts.

██ Considering first the second of these issues, we are of opinion that the decree apportioning liability between the beneficiaries, being supported by the Master's report, confirmed, after exceptions, by the Chancellor, and affirmed in a concurring opinion by the Court of Appeals, should be affirmed. This is a matter of accounting, involving facts chiefly, which, having been concurrently adjudged, as above shown, this Court does not feel called upon to reopen. See Rule 14, paragraph (7).

However, we feel constrained to differ with the Chancellor and Court of Appeals regarding the allowance of interest on advancements made by the Trust Company, the amount of which is not in dispute.

Treating these advancements as unliquidated accounts, rather than liquidated, as contended, interest on which had not been expressly contracted for, and, therefore, not within the class of demands provided for by Code, Section 7305, the allowance of interest was held to be a matter within the discretionary powers of the Chancellor. Exercising this assumed discretion, the Chancellor refused to allow interest, upon the following grounds:

The Court was of opinion that the funds used by the Trust Company in making these advancements from time to time for the benefit of this trust had been appropriated to this use, not from its corporate, separately owned funds, but from a common account on its books, made up of numerous balances of funds belonging to various other beneficiaries of trusts being administered by it, and that any interest thus earned accrued and belonged to these other beneficiaries; that, therefore, to grant this trustee, the Trust Company, credit therefor would be in contravention of the rule this Court has emphasized and enforced, that a trustee may not divert and appropriate to its own use profits derived from use by it of funds so held by it.

In the first place, we do not find this to be a case in which the allowance of interest is a matter resting in the sound discretion of the Chancellor. In view of the manner in which the different items are shown to have been entered and set up, from time to time, by Mr. Witherspoon, who acted throughout, by consent of parties, in the double capacity of a member of the partnership and an officer of the Trust Company, and whose acts in this regard were approved, at least not objected to, by the other beneficiaries, we are inclined to agree to the contention, plausibly argued for the Trust Company, that the accounts including interest, come within the liquidated class.

██ ██ But, however this may be, we are clearly of opinion that, while the trust instrument involved does not expressly provide for the payment of interest on monies for the advancement of which it does expressly provide, upon a reasonable construction it is apparent that the payment of interest was contemplated and the obligation arises by implication as a matter of law. It is not reasonably conceivable that it was within the contemplation

of the parties that this bank and trust company should advance funds for the payment of taxes and other costs and claims of administration of the trust without compensation in the form of interest thereon. Supporting this theory of implied contract to pay interest, the instrument expressly empowers the trustee to borrow funds needed for these purposes, and if deemed by it best, to mortgage any portions of the lands, or to pledge or sell notes, the proceeds of land sales, and by these means realize the required funds. Of course, it was contemplated that interest would be paid in connection with these transactions. That the Trust Company elected to employ its own funds, instead of raising funds from other sources by these methods, is not a proper subject of complaint. Moreover, the setting up of charges for interest, from time to time, was so recognized and acquiesced in by the parties as to indicate a construction to this effect. For example, deductions appear to have been claimed by these beneficiaries in making their tax returns. For these reasons we hold that, on the facts of this case, the allowance of interest was not a question for determination by the Chancellor in the exercise of his discretion, but falls within the contract class.

But the contention is earnestly made for the beneficiaries that, nevertheless, the Trust Company should be denied the right to make this claim in application of the doctrine of unclean hands, this upon the theory heretofore mentioned that the funds used by the Trust Company in making these advancements were not its own, but assets taken from trust funds of other beneficiaries in the hands of the Trust Company.

In the first place, we are not of opinion that these beneficiaries of these advancements are in position to repudiate their obligation to pay interest, if otherwise

binding, by inquiring into and questioning the source of the funds loaned to them by the Trust Company. These borrowers have no legitimate concern with the source of the funds loaned to and enjoyed by them. This is matter for the beneficiaries of the trusts alleged to have been thus encroached upon to complain of.

 Application of the doctrine of unclean hands, a doctrine this Court has repeatedly approved and applied, is subject to limitations. In point here, it is said in 19 Am. Jur., 327, that the acts complained of will not afford grounds for application of this maxim if not "related to defendant or anything in which he was interested," citing *Dunscombe* v. *Amfot Oil Co.*, 201 Ky. 290, 256 S. W. 427, 429, where it was said that, "equity will scrutinize his conduct with reference to the transaction *as it affects his adversary,* and if it is fraudulent, illegal or unconscionable he will be dismissed," etc. We have italicised pertinent language. And on page 328, following, under the sub-title, "Conduct Not Affecting Defendant," the text reads: "If the alleged wrongful conduct of the complainant appears not to have injured, damaged, or prejudiced the defendant, the maxim may not be successfully invoked," citing *Langley* v. *Devlin,* 95 Wash. 171, 163 P. 395, reported and fully annotated in 4 A. L. R. 32. On page 58, under subhead "Necessity of injury to adverse party," the Annotator says, "The party to suit complaining of a wrong must have been injured thereby to justify the application of the principle of unclean hands to the case of his opponent," citing and reviewing cases. And see 30 C. J. S., Equity, sec. 98, pp. 493, 494, where the general rule is said to be that, "the misconduct must be so connected with the subject matter as to affect the opposite party," etc., citing cases from many jurisdictions, including our case of *Williams* v. *S. & W. Const. Co.,* 167

Tenn. 84, 66 S. W. (2d) 992, 993. A note to C. J. S., *supra,* reads, " 'Clean hands' means a clean record with respect to the transaction with the defendant, and not with respect to any third person."

In the *Williams Case, supra,* this was said, directly in point here:

"A court of equity would hardly be warranted in applying this maxim when the previous unclean conduct had related to a transaction wholly with an independent third party. Discussing this maxim, Mr. Gibson says (Gibson's Suits, par. 42), 'But the operation of the maxim is confined to misconduct connected with the particular matter in litigation; and does not extend to any misconduct, however gross, which is unconnected therewith, and *with which the defendant is not concerned.'* (Italics ours.) A may not rely upon this maxim as a defense because it appears that at some previous time B had obtained from a third party the funds or the thing in litigation by the prosecution of an unjust demand. This would take the court too far afield, involve a reopening of past and independent issues, and the bringing in of parties not before the court in the pending suit. The authorities treating of this maxim are fully reviewed in *Overton* v. *Lewis,* 152 Tenn. 500, 279 S. W. 801, and the exception here suggested approved."

It may be remarked in this connection that, if this record had been found to call for the application of this doctrine with respect to the item of interest, or any other material items involved, then, in accordance with the holdings of this Court, the vice would extend to all claims asserted by the offending party, repelling such a party from the Court at the threshold, and denying recovery altogether. *Heylandt Sales Co.* v. *Welding Gas Products Co.,* 180 Tenn. 437, 175 S. W. (2d) 557.

■ While the views we have expressed are conclusive of the question, we think it proper to add that the insistence of the Trust Company is plausibly made that there is no satisfactory showing that a wrongful diversion of other trust funds took place; that the contention rests upon a misconstruction of the effect of the bookkeeping methods employed by the Trust Company; that, in fact, the advancements were made from its own funds, properly so applicable; that it has been at all times solvent and able to account for all of its obligations, trust and otherwise, and has fully so accounted. There is no showing to the contrary. The Trust Company is entitled to the benefit of the presumption that it has acted lawfully, not in violation of its trust obligations.

■ It results that, in our opinion, the doctrine of unclean hands may not be invoked by respondents as against the claim for interest.

The decree of the Court is modified so as to allow interest, otherwise affirmed, and remanded.