Richard L. GREER, Plaintiff-Appellant,

v.

SHELBY MUTUAL INSURANCE COM-
PANY and Springer Insurance Agency,
Defendants-Appellees.

Court of Appeals of Tennessee,
Middle Section, At Nashville.

July 13, 1983.

Permission to Appeal Denied by
Supreme Court Oct. 24, 1983.

W.A. Moody, Moody & Moody, Nashville,
for plaintiff-appellant.

David Steed, Watkins, McGugin, McNeil-
ly & Rowan, Nashville, for defendants-ap-
pellees.

OPINION

CONNER, Judge.

Two issues are here presented for review,
to wit: whether the trial court properly
granted defendant-appellee's motion for
summary judgment regarding (1) liability
under a fire insurance policy and (2) alleged
libelous statements contained in a letter
written by the insurance company to plain-
tiff denying coverage thereunder.

The material facts are without substan-
tial dispute. They are gleaned from deposi-
tions, answers to interrogatories and affida-
vits filed and upon which the motion for
summary judgment was decided by the trial
court. Viewing the facts in the light most
favorable to Mr. Greer as we must, *see* p.
629, *infra,* they reveal that on November 15,

1979, plaintiff-appellant, Richard L. Greer,[1] purchased 7.22 acres of improved realty for a price of $20,000.00 from Mr. Bruce Corlew and Mr. Tom Beasley. The improvements consisted of a log house, a barn and a shed. As a part of the transaction, Mr. Corlew and Mr. Beasley also transferred to plaintiff a $20,000.00 fire insurance policy which had been issued to them by Glens Falls Insurance Company.

Mr. Greer paid the purchase price for the land with the proceeds of a personal loan he obtained from First American National Bank for that purpose. However, when the transaction was consummated, legal title to the property was placed in the name of Electric Motor Rewind, Inc., a Tennessee corporation of which plaintiff was a 50% stockholder. Mr. Greer candidly admitted that he deeded the property to the corporation in order to conceal his ownership thereof from his wife due to a pending divorce proceeding. The remaining stock in the corporation is owned by Mr. Jim Grissim, plaintiff's business partner. By affidavit Mr. Grissim acknowledged that the corporation claimed absolutely no ownership interest in the subject premises.

After plaintiff purchased the land, he contends he made substantial improvements to the log house which in his view significantly increased its market value. Consequently, Mr. Greer sought and received from Shelby Mutual an additional fire insurance policy in the amount of $15,000.00. That policy was issued in Mr. Greer's name and not in the name of the corporation. At the time of issuance Mr. Greer advised the insurance agent, Mr. Bill Springer, that he wanted the insurance in the "company name" because he was "going through this divorce" and "the house was in the company name and I wanted everything right. So when this divorce came up I would be taken care of."

On January 19, 1980, approximately sixty days after the purchase of the realty and the second policy, the log house was totally destroyed by fire.

Mr. Greer sought payment under both policies. He received $20,000.00 under the Glens Falls policy. However, by letter dated July 31, 1980, Shelby Mutual denied plaintiff's claim for the balance of the loss. That letter stated:

Dear Mr. Greer:

We've now had a chance to investigate this claim and we feel that we do not owe you any money on the Shelby Mutual policy. Therefore, we are returning your proof of loss to you. We feel we do not owe the money for the following reasons:

1. You have been fully paid under the Glens Falls policy.

2. Shelby Mutual's policy was an open policy, whereas the Glens Falls policy was a valued policy.

3. The Glens Falls policy and the adjuster destroyed our right to properly adjust this loss when they adjusted it and cleared the land before Shelby Mutual had a chance to investigate this loss.

4. The Shelby Mutual policy was written on the basis that the premises would be occupied, and the premises were unoccupied at the time of the loss.

5. The Shelby Mutual Insurance Company would have been unwilling to write a policy if they had known that the premises were fully insured under the Glens Falls policy.

6. The discrepancy between the interest of the named insured and the actual ownership of the property.

7. There is an indication that this claim may be fraudulent.

8. There is an indication that the fire was intentionally set.

It is the contention of the Shelby Mutual Insurance Company that any one of these eight (8) reasons would be sufficient to avoid coverage under the terms of its policy. Therefore, I am returning the original proof of loss to you.

Since you have already obtained an attorney, I am sending a copy of this letter

1. Hereinafter, the parties will be referred to as in the trial court or by their names, as abbreviated. Mr. Greer nonsuited as to the original defendant, Springer Insurance Company.

directly to Mr. Benny Reagan. If your (sic) or Mr. Reagan disagree with the reasons that Shelby Mutual has for refusing to pay this particular claim, the Courts of the State of Tennessee are open to you.

Very truly yours,

SHELBY MUTUAL INSURANCE COMPANY

Giles E. Robertson

Claims Manager

Encl.

cc: Mr. Benny Reagan

Mr. Lawrence Levine

This suit was filed on September 16, 1980. In his complaint plaintiff sought to recover the face amount of defendant's policy as equitable owner of the land under the theory of resulting trust. Mr. Greer further sought the statutory penalty imposed upon insurers for the bad faith refusal to pay a claim. *See* T.C.A. § 56–7–105. The amount sought under the policy itself represented plaintiff's total damages resulting from the fire less the amount recovered under the Glens Falls policy. Plaintiff also sought money damages for libel alleging that the denial letter defamed him.

Shelby Mutual answered denying the material allegations contained in the complaint and raised the equitable defense of unclean hands to the policy claim.

On February 19, 1982, defendant moved for summary judgment on both the policy and libel contentions. Because of procedural irregularities that motion was not heard until July 17, 1982. On September 24, 1982, the trial court granted defendant's motion in its entirety. Plaintiff appeals.

The summary judgment procedure was designed to provide a quick, inexpensive means of concluding cases on issues where there is no dispute regarding material facts, but was not intended for the resolution of factual issues. *Brookins v. The Round Ta-* *ble, Inc.,* 624 S.W.2d 547 (Tenn.1981). In ruling on motions for summary judgment we must view the proof in the light most favorable to the opponent of the motion and draw all legitimate conclusions of fact therefrom in that favor. *Stone v. Hinds,* 541 S.W.2d 598 (Tenn.App.1976). Such motion can be granted only when the pleadings, stipulations and affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Phillips v. Pittsburgh Consolidated Coal Company,* 541 S.W.2d 411 (Tenn.1976); *Evco Corporation v. Ross,* 528 S.W.2d 20 (Tenn.1975); *Brookins v. The Round Table, Inc., supra.*

Plaintiff initially contends that the trial court erred in granting defendant's motion for summary judgment on the issue of defendant's liability under the contract of insurance. More specifically, plaintiff contends that a material issue of fact exists regarding the extent of plaintiff's insurable interest in the property. We agree.

■ Defendant maintained and the trial court found that plaintiff's resulting trust theory was barred by the doctrine of "unclean hands;" that since legal title to the land was in the corporation name the land was "corporate" property; that plaintiff's insurable interest in corporate property is proportional to his percentage ownership in the corporation (50%); that the maximum value of the property is $35,000.00; that the value of plaintiff's interest therein is 50% of $35,000.00 or at most $17,500.00; and that plaintiff has been fully indemnified by the $20,000.00 payment received under the Glens Falls policy.[2] Plaintiff, on the other hand, contends that the "clean hands" defense is inapplicable under the circumstances; that he paid 100% of the purchase price of the realty with his personal funds; that a resulting trust arose on his behalf because

---

2. Because the Shelby policy had only been in effect for 63 days, it was an "open" policy, whereas the Glens Falls policy was a "valued" policy. *See* T.C.A. § 56–7–802. When the same property is covered by both a "valued" policy and an "open" policy, the "open" policy is an excess policy. Thus, the insured is only entitled to recover the amount of his interest that exceeds the amount received from the "valued" policy. *Commercial Union Insurance Co. v. Sneed,* 541 S.W.2d 943 (Tenn.1976); T.C.A. § 56–7–801.

of that purchase; that as the sole beneficiary of such trust he is the 100% equitable owner thereof and has a 100% insurable interest therein; and that his testimony, if believed, would establish the value at $35,000.00 entitling him to recover the entire $15,000.00 under the additional Shelby Mutual policy.

With regard to the "unclean hands" defense the trial court specifically held that:

Because of plaintiff's admitted abuse of the corporate form, plaintiff is estopped to allege that he is the "equitable" owner of the property that was destroyed. Plaintiff's deposition establishes that plaintiff was not entitled to equity because of his "unclean hands" in deeding the property to the corporation in an effort to perpetrate a fraud upon his wife, who was preparing to divorce him.

In *Overton v. Lewis,* 152 Tenn. 500, 279 S.W. 801 (1926), our supreme court stated that:

... it is not every willful and reprehensible act that will preclude a litigant in a court of equity from obtaining the relief prayed, but such conduct, under the principle involved in this maxim, *must bear an immediate relation to the subject-matter of the suit,* and in some measure affect the equitable relations subsisting between the parties to the litigation and arising out of the transaction.... (Emphasis in original.)

*Id.* at 510, 279 S.W. at 804. *See also Chappell v. Dawson,* 202 Tenn. 672, 308 S.W.2d 420 (1957); *Seaton v. Dye,* 37 Tenn.App. 323, 263 S.W.2d 544 (1953); *Nolen v. Witherspoon,* 182 Tenn. 333, 187 S.W.2d 14 (1945).

Similarly, a well respected treatise says:

... *The operation of the maxim is confined to misconduct connected with the particular matter in litigation and does not extend to any misconduct, however gross, which is unconnected therewith, and with which the defendant is not concerned....* (Emphasis supplied.)

W. Inman, *Gibson's Suits in Chancery* § 18 p. 20–21 (6th ed. 1982).

■ In our view the doctrine of "unclean hands" is not a bar to plaintiff's claim. Granted that the conduct of plaintiff in placing title to the land in the corporation name might constitute an equitable defense in divorce court. (Though that is questionable since the property was purchased with money borrowed solely by Mr. Greer.) However, such conduct is collateral to the transaction involved in this lawsuit, i.e., the contract of insurance. As such, it cannot create a bar to recovery thereunder if indeed Mr. Greer is the true owner of the property as he alleges and regarding which he has offered substantial pre-trial proof. *See Overton v. Lewis, supra.*

■ Given that the clean hands defense is inapplicable, the factual question of ownership becomes material. Such material questions of fact are to be decided by the trier of fact and not the court on a motion for summary judgment. The evidence submitted by plaintiff to the effect that he paid for the realty with his personal funds yet had the property titled in the corporate name is sufficient, if believed, to establish the existence of a resulting trust. *See Greenwood v. Maxey,* 190 Tenn. 599, 231 S.W.2d 315 (1950). *See also Greene v. Greene,* 38 Tenn.App. 238, 272 S.W.2d 483 (1954). If plaintiff can establish that actual equitable ownership of the property was 100% in him, it would be Shelby Mutual's responsibility to pay the claim to the extent that the loss exceeds $20,000.00, assuming there are no other policy defenses available. It was error to take the question of ownership from the jury.

As stated in *American Indemnity Company v. Southern Missionary College,* 195 Tenn. 513, 260 S.W.2d 269 (1953):

... Thus in Couch's Cyclopedia of Insurance Law, Vol 4, § 915, it is said:

"So, it is said that *a condition for sole and unconditional ownership means the 'real owner,'* and is not breached by the mere fact that the record title is, for purposes of convenience, in another for a time. In fact, *an equitable title in the insured is a sufficient compliance with a condition that the insured must have sole*

*and unconditional ownership.* Again, a provision for 'sole and unconditional ownership' does not require a perfect legal title, *but is satisfied if the insured has an insurable interest, and is the substantial owner upon whom the entire loss would fall.*" (Emphasis supplied.)

*Id.* at 523, 260 S.W.2d at 274.

 Plaintiff next attacks the trial court's dismissal of his libel count. That claim was based upon the following statements contained in the denial letter:

> There is *an indication* that this claim *may be* fraudulent.

> There is *an indication* that the fire *was intentionally set.* (Emphasis supplied.)

The trial court found that defendant's statements were true as a matter of law. We concur in that finding. First, as regards the "arson" statement, plaintiff admitted in his deposition that even *he* thought the fire was intentionally set. There he stated:

> Q. You thought somebody burned it?
> A. Yes.
> Q. . . . You thought that the fire was intentionally set, is that right?
> A. Yes, I do.

Regarding the "fraud" statement the undisputed proof reveals that there were indeed suspicious circumstances surrounding the fire indicating the *possibility* of fraud as suggested in the letter. Those circumstances include the fact that there was $35,000.00 of insurance on property purchased shortly prior thereto for $20,000.00; the brief length of time between the issuance of the policy and the fire; the plaintiff's absence from the dwelling at the time of the fire; the fact that plaintiff had a friend bulldoze the site before defendant's adjuster had the opportunity to examine it; and the variation between the named insured and the owner of the property. Based upon these circumstances we concur with the trial court's conclusion that defendant's statement that "[t]here is an *indication* that the claim *may* be fraudulent" was a matter of law true and therefore not actionable. *See* W. Prosser, *Law of Torts,* § 116 p. 798 (4th ed. 1971); *Restatement (Second) of Torts*

§ 581A. Moreover, we doubt that there has here been a publication of the letter since the proof is that plaintiff authorized Shelby Mutual to deal with his friend, Benny Reagan, who was sent a copy of the alleged defamatory letter for that reason.

Accordingly, the judgment of the trial court granting defendant's motion for summary judgment on the issue of liability is reversed and that portion of the motion is denied. Summary judgment for defendant on the libel issue is affirmed. This cause is remanded for trial on the issues of liability and damages. The costs are taxed equally against the plaintiff and the defendant.

AFFIRMED IN PART, REVERSED IN PART AND REMANDED.

TODD, P.J. (M.S.), and LEWIS, J., concur.