# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
Assigned on Briefs November 14, 2011

## KATHRYN M. CLAIBORNE v. LARRY W. GOLDSTON

**Appeal from the Chancery Court for Knox County**
**No. 171821-1    Hon. John F. Weaver, Chancellor**

———————————

**No. E2011-00135-COA-R3-CV-FILED-MARCH 28, 2012**

———————————

In this case, Kathryn M. Claiborne sought to set aside a quitclaim deed relating to property given to Larry W. Goldston. The trial court set aside the deed but awarded damages to Larry W. Goldston based upon his counterclaim for unjust enrichment. Kathryn M. Claiborne appeals. We affirm the judgment of the trial court as modified.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court**
**Affirmed as Modified; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the court, in which, HERSCHEL P. FRANKS, P.J., and CHARLES D. SUSANO, JR., J., joined.

Tracy Jackson Smith, Knoxville, Tennessee, for the appellant, Kathryn M. Claiborne.

Mark N. Foster, Rockwood, Tennessee, for the appellee, Larry W. Goldston.

## OPINION

## I.  BACKGROUND

Kathryn M. Claiborne ("Ms. Claiborne") bought the property at issue in this case from her mother in 1987. Ten years later, Ms. Claiborne invited Diane S. Goldston ("Ms. Goldston") to live with her on the property because she owed Ms. Goldston approximately $20,000. Ms. Goldston did not pay rent but paid half of the utility bill each month. The next year, Ms. Claiborne's health declined. In fear of losing her job because of her condition, she refinanced the mortgage on the property to reduce her monthly payment. Shortly thereafter, she lost her job. As Ms. Claiborne's health deteriorated, she decided to convey an undivided

one-half interest in the property to Ms. Goldston in exchange for the payment of the balance of the mortgage and the promise to care for her as her conditioned worsened. She asked Ms. Goldston to prepare a quitclaim deed evidencing the conveyance. At that point, Ms. Goldston had already begun making the monthly mortgage payments on the property.

In 2001, Ms. Goldston told Ms. Claiborne that her brother Larry W. Goldston ("Mr. Goldston") had prepared a document evidencing their agreement. Ms. Goldston drove Ms. Claiborne to a gas station in Harriman, Tennessee, where they met Mr. Goldston. Once at the gas station, Ms. Goldston prepared a handwritten quitclaim deed and placed the deed in front of Ms. Claiborne. Ms. Claiborne questioned the validity of the document, expressing concern that Ms. Goldston's name was not on the document. Ms. Goldston signed the document following Ms. Claiborne's request. Unbeknownst to Ms. Claiborne, Ms. Goldston signed the document as a witness to the conveyance of the entirety of the property to Mr. Goldston for $1. At some point, Ms. Claiborne signed a correction quitclaim deed on the property. Following the execution of the correction quitclaim deed, Mr. Goldston paid the entirety of Ms. Claiborne's Y-12 Credit Union ("Y-12") mortgage on the property and executed another mortgage on the property in a higher amount with ORNL Credit Union ("ORNL"). Ms. Goldston began payment of the ORNL mortgage and paid the insurance and taxes on the property as rent to Mr. Goldston. Ms. Goldston also paid for a new furnace and repairs to a bay window.

In November 2007, Ms. Claiborne asked Ms. Goldston if she could buy back her interest in the property. Ms. Goldston told her to speak with Mr. Goldston. When Ms. Claiborne spoke with Mr. Goldston, she learned that the deed conveyed the entirety of the property to Mr. Goldston, who refused to sell the property back to her. Mr. Goldston sent Ms. Claiborne an eviction notice and placed a for sale sign on the property.

Ms. Claiborne filed suit against Mr. Goldston and ORNL. She asked the court to set aside the quitclaim deed on the ground of fraud. Mr. Goldston denied that Ms. Claiborne was entitled to relief and submitted a counterclaim, requesting possession of the property and compensatory damages in the amount of the fair market value of the property for the period in which he was denied access. ORNL denied that Ms. Claiborne was entitled to relief and asserted that the deed and resulting mortgage on the property were valid. Mr. Goldston and ORNL filed a motion for summary judgment.

Ms. Claiborne sought leave to amend the complaint to include Ms. Goldston as a party, and Mr. Goldston sought leave to amend his counterclaim to include a claim for unjust enrichment, asserting that if the deed were to be set aside, he would be entitled to recover his payment of Ms. Claiborne's mortgage, property taxes, insurance, maintenance and repairs, and interest, fees, and other charges on loans taken to make the payments described. Ms.

Claiborne and Mr. Goldston agreed to the aforementioned amendments, and Ms. Goldston was added as a party. Ms. Goldston then filed a motion for summary judgment, asserting that "without any fraud or misleading conduct on her part, Ms. Claiborne signed a quitclaim deed conveying her interest in the property to [Mr. Goldston]." Ms. Goldston did not assert a counterclaim for unjust enrichment. The court granted ORNL's motion for summary judgment but denied the other motions for summary judgment.

The court bifurcated the trial and held two separate hearings. The first hearing related to Ms. Claiborne's complaint, while the second hearing related to the issues raised in Mr. Goldston's counterclaim. Following the first hearing, the court found

> [t]hat there was no consideration from Mr. Goldston to [Ms. Claiborne]. There was, by Mr. Goldston's own testimony, no agreement, no contract. There was no promise by Mr. Goldston. There was, absent a finding of fraud, an unexplained transfer. The evidence rebuts any finding of a gift. The evidence preponderates in favor of a finding that the transaction was not fair.

In so finding, the court set aside the quitclaim deeds, "subject to the trust deed in favor of ORNL." The court ordered Mr. Goldston to discharge the ORNL lien in full and awarded him a lien against the property in the amount of $68,138.88, reflecting his payment of the Y-12 mortgage and interest that would have accrued on the mortgage. Following the second hearing, the court found that Mr. Goldston was entitled to recover $81,969.14, reflecting the payment of the Y-12 mortgage; interest on the mortgage; the cost of the furnace; the cost of the repair to the bay window; insurance on the property; and city and county taxes on the property, less penalties and interest from 2008-2009.

Ms. Claiborne requested to set off of the judgment in the amount of lost rent for the period following the alleged conveyance. She opined that if the quitclaim deed had not been executed, the payments made by Ms. Goldston as rent from 2001 to 2007 would have been sent to her instead of Mr. Goldston. The court denied the request as untimely, finding that the claim had not been suggested or raised prior to the court's judgment, that Ms. Claiborne had not asserted a claim for monetary damages, that Ms. Claiborne had not asked the court to conform the pleadings to the proof, and that the proof had already been submitted. Ms. Claiborne filed a motion asking the court to reconsider its decision forbidding her from raising the issue of lost rent. Before the trial court ruled, Mr. Goldston agreed to Ms. Claiborne's voluntary dismissal of the suit against Ms. Goldston in exchange for Ms. Claiborne's consent to the assignment of Ms. Goldston's claims to him. In turn, Ms. Goldston agreed that she would not assert a counterclaim for unjust enrichment in any future suit between her and Ms. Claiborne. The parties also submitted that the motion to reconsider was rendered moot by the agreement. This timely appeal followed.

## II. ISSUES

We consolidate and restate the issues raised on appeal by Ms. Claiborne as follows:

    A. Whether the doctrine of unclean hands precluded Mr. Goldston's recovery.

    B. Whether the trial court erred in setting the amount of recovery.

    C. Whether the trial court erred in refusing the request for lost rent.

Mr. Goldston raised issues for our consideration that we restate as follows:

    D. Whether the appeal is properly before this court when Ms. Claiborne consented to the amount awarded to Mr. Goldston in the judgment.

    E. Whether Ms. Claiborne's appeal was frivolous.

## III. STANDARD OF REVIEW

On appeal, the factual findings of the trial court are accorded a presumption of correctness and will not be overturned unless the evidence preponderates against them. *See* Tenn. R. App. P. 13(d). The trial court's conclusions of law are subject to a de novo review with no presumption of correctness. *Blackburn v. Blackburn*, 270 S.W.3d 42, 47 (Tenn. 2008); *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993). Mixed questions of law and fact are reviewed de novo with no presumption of correctness; however, appellate courts have "great latitude to determine whether findings as to mixed questions of fact and law made by the trial court are sustained by probative evidence on appeal." *Aaron v. Aaron*, 909 S.W.2d 408, 410 (Tenn. 1995).

## IV. DISCUSSION

### A.

Ms. Claiborne contends that Mr. Goldston's "active involvement in the execution of the quitclaim deed and the obvious unfairness of the transaction" precluded recovery pursuant to the doctrine of unclean hands. Mr. Goldston responds that the record before this court is insufficient for purposes of determining whether the claim should be precluded based upon his alleged unclean hands because the testimony regarding his involvement in the transaction was conflicting. He asserts that the court did not err in granting his unjust enrichment claim.

Having reviewed the record, we conclude that the record is sufficient for our determination of this issue. The unclean hands doctrine derives from the equitable maxim: "He who comes into Equity must come with clean hands." *Heylandt Sales Co. v. Welding Gas Prods. Co.*, 175 S.W.2d 557, 561 (Tenn. 1943) (quoting Gibson's Suits in Chancery § 42 (4th ed.)). The rationale for the doctrine is:

> [A] complainant, who has been guilty of unconscientious conduct or bad faith, or has committed any wrong, in reference to a particular transaction, cannot have the aid of a Court of Equity in enforcing any alleged rights growing out of such transaction.

*Hogue v. Kroger Co.*, 373 S.W.2d 714, 716 (Tenn. 1963) (quoting Henry R. Gibson, Gibson's Suits in Chancery § 51 (Arthur Crownover, Jr., ed. 5th ed. 1955)). The operation of the maxim is confined to misconduct connected with the subject matter of the litigation. *Greer v. Shelby Mut. Ins. Co.*, 659 S.W.2d 627, 630 (Tenn. Ct. App. 1983) (citing Henry R. Gibson, Gibson's Suits in Chancery § 18 (William H. Inman, ed., 6th ed. 1982)). The doctrine is inapplicable when the misconduct complained of is not connected with the subject matter of the suit. *See Nolen v. Witherspoon*, 187 S.W.2d 14, 16 (Tenn. 1945).

The way in which Mr. Goldston attempted to secure title to the property was undoubtably questionable, regardless of which version of events was accepted by the court. However, Mr. Goldston's payment of Ms. Claiborne's mortgage was a collateral transaction that did not affect his initial attempt to secure title. As evidenced by the court's ruling, neither deed referenced any agreement by Mr. Goldston to pay Ms. Claiborne's mortgage. Nothing in the record indicates any misconduct on the part of Mr. Goldston with respect to his payment of the mortgage or expenses. *See Greer*, 659 S.W.2d at 630. In *Greer*, the court held that even though the insured had questionable title to the property at issue, an insurance company could not use the insured's questionable title to deny an insurance claim following the destruction of the property. *Id.* Similarly, we refuse to reject Mr. Goldston's unjust enrichment claim solely because his actions in attempting to secure title to the property were questionable.

B.

Ms. Claiborne contends that Mr. Goldston cannot recover any payment for the benefits bestowed upon her by Ms. Goldston. She notes that Ms. Goldston never asserted a claim for unjust enrichment and that Mr. Goldston could not assert the claim for Ms. Goldston, despite the court's ruling and the agreement that the claim had been assigned. Mr. Goldston responds that Ms. Goldston agreed that any payments submitted by her were made on his behalf as rent and that her claims were properly assigned to him.

Mr. Goldston recovered his payment of Ms. Claiborne's mortgage and interest on the theory of unjust enrichment. "The doctrine of unjust enrichment is founded upon the principle that someone who receives a 'benefit desired by him, under circumstances rendering it inequitable to retain it without making compensation, must do so.'" *CPB Mgmt., Inc. v. Everly*, 939 S.W.2d 78, 80 (Tenn. Ct. App. 1996) (quoting *Lawler v. Zapletal*, 679 S.W.2d 950, 955 (Tenn. Ct. App. 1984)). As relevant to this case, the elements of the unjust enrichment claim are:

(1) a benefit conferred upon [the plaintiff] by [the defendant];

(2) appreciation by [the plaintiff] of such benefit; and

(3) acceptance of such benefit under circumstances that it would be inequitable for [the plaintiff] to retain the benefit without payment of the value thereof.

*Bennett v. Visa U.S.A. Inc.*, 198 S.W.3d 747, 755 (Tenn. Ct. App. 2006) (internal quotations and citations omitted). Establishing that the defendant conferred an unjust benefit to the plaintiff is the most significant requirement of an unjust enrichment claim. *Id.*

Here, Mr. Goldston paid the remaining amount of Ms. Claiborne's Y-12 mortgage on her property without securing title to the property. Ms. Claiborne appreciated the benefit bestowed upon her because she was no longer tasked with submitting a mortgage payment. Ms. Claiborne's acceptance of that benefit without any amount of payment for the value received would be inequitable. Accordingly, we conclude that Mr. Goldston was entitled to recover the amount he paid to fulfill the Y-12 mortgage and any interest relating to that amount.

However, Mr. Goldston did not directly expend any additional amount on the property beyond his payment of the mortgage and interest. The testimony presented reflects that Ms. Goldston paid for a new furnace and repaired the bay window at her expense. As rent to Mr. Goldston, she also submitted payment for insurance on the property, paid the city and county taxes on the property, and submitted mortgage payments to ORNL. As the trial progressed, the court advised the parties that Mr. Goldston could not assert a claim for payments made by Ms. Goldston unless Ms. Goldston assigned her claims to him. The parties then agreed that the claims raised by Mr. Goldston would be treated as having been assigned to him by Ms. Goldston. In keeping with this agreement, Mr. Goldston was awarded an additional amount of recovery, reflecting the amount paid for the new furnace, the repair to the bay window, and the insurance and taxes on the property. A claim for these payments was never properly raised by Ms. Goldston; therefore, she had no right to recover any amounts expended for the maintenance of the property. Consequently, we believe that her assignment

of her potential claims to Mr. Goldston was ineffective. Accordingly, we modify the judgment of the trial court to reflect an award of $68,138.88 to Mr. Goldston, reflecting the payment of the Y-12 mortgage and interest on that amount as raised in the counterclaim for unjust enrichment.

C.

Ms. Claiborne asserts that the trial court erred in denying her initial request to either set off the judgment in an amount commensurate with lost rent from Ms. Goldston or to amend her complaint to include damages in the amount of lost rent. She states that if the quitclaim deed had not been executed, Ms. Goldston would have continued payment of the Y-12 mortgage as rent. Instead, Ms. Goldston paid Mr. Goldston's ORNL mortgage as rent to Mr. Goldston, who did not have valid title to the property.

We conclude that the trial court did not err in denying the initial motion to set off the judgment because the issue of lost rent was not raised in the pleadings. *See Trau–Med of Am., Inc. v. Allstate Ins. Co.*, 71 S.W.3d 691, 704 (Tenn. 2002) ("[T]here is no duty on the part of the court to create a claim that the pleader does not spell out in his complaint."). Likewise, we note that a claim for damages in the form of lost rent had not been included in the original complaint or the amended complaint. In order to proceed on that claim, Ms. Claiborne would have to amend her complaint or request that the pleadings conform to the evidence.

Relative to an amendment of the complaint, the rule at issue provides, in pertinent part, that "a party may amend [its] pleadings . . . by leave of court; and leave shall be freely given when justice so requires." Tenn. R. Civ. P. 15.01. While requiring leave to be freely given lessens the discretion of the trial court in granting or denying such motions, the court's grant or denial of a motion to amend the pleadings is still generally subject to an abuse of discretion standard. *Merriman v. Cont'l Bankers Life Ins. Co.*, 599 S.W.2d 548, 559 (Tenn. Ct. App. 1979); *see also Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 330 (1971). In determining whether to grant such a motion, the court must consider the following factors: "[u]ndue delay in filing; lack of notice to the opposing party; bad faith by the moving party; repeated failure to cure deficiencies by previous amendments[;] undue prejudice to the opposing party[;] and futility of amendment." *Merriman*, 599 S.W.2d at 559 (citing *Hageman v. Signal L. P. Gas, Inc.*, 486 F.2d 479 (6th Cir. 1973)). Ms. Claiborne had amended her complaint to add Ms. Goldston as a party but failed to request any damages for lost rent. Following our review, we conclude that the trial court did not abuse its discretion in refusing to allow Ms. Claiborne to amend the complaint a second time. *Id.*

Additionally, the evidence as presented did not support a claim for lost rent. Indeed, Ms. Claiborne requested leave to reopen the proof to submit testimony in support of her claim. The parties agreed to the voluntarily dismissal of the suit against Ms. Goldston before the trial court ruled upon the motion to reconsider and the motion to reopen the proof. We note that in exchange for her ability to voluntarily dismiss the suit without objection from Mr. Goldston, Ms. Claiborne agreed to the assignment of Ms. Goldston's unjust enrichment claims to Mr. Goldston. Having invalidated that agreement, we hold that Ms. Goldston should be allowed to assert a counterclaim alleging unjust enrichment in any future suit involving the issue of lost rent.

D.

Mr. Goldston contends that by agreeing to the amount awarded to him and the denial of the motion to reconsider, Ms. Claiborne entered into a consent judgment, thereby waiving her right to appeal. He opines that the statement of the evidence approved by the trial court provided that the parties agreed to the amount awarded to Mr. Goldston. Ms. Claiborne responds that she never agreed that Mr. Goldston was entitled to recover anything on his counterclaim. She admits that at the direction of the trial court, she agreed that the amounts listed in the judgment reflected the value of the "out-of-pocket expenses" to purchase the furnace, repair the bay window, and pay the insurance and city and county taxes for the property. She asserts that she only agreed that the issues contained in the motion to reconsider were moot because she had been allowed to voluntarily dismiss her suit against Ms. Goldston, thereby allowing her to raise those issues in a subsequent suit.

"A judgment by consent is in substance a contract of record made by the parties and approved by the court." 49 C.J.S *Judgments* § 227. Consent orders are "conclusive upon the consenting parties, and can neither be amended nor in any way varied without like consent; nor can it be reheard, appealed from or reviewed upon writ of error." *Nance v. Pankey*, 880 S.W.2d 944, 946 (Tenn. Ct. App. 1993).

We acknowledge that a sentence in the statement of the evidence provided that the parties agreed to the amount awarded to Mr. Goldston. The sentence, when taken in isolation, tends to support Mr. Goldston's assertion. However, the record as a whole reveals that the court ruled that Mr. Goldston was entitled to recover his payment of the mortgage, interest, and expenses before it directed the parties to agree on the amount of the expenses that should be awarded in consideration of its ruling. Ms. Claiborne never agreed that Mr. Goldston was entitled to recover anything but merely acquiesced to the court's direction to ascertain the value of the cost of repairs and any additional amounts that were expended on the property by the Goldstons. Accordingly, we conclude that Mr. Goldston's claim that the parties entered into a consent judgment is wholly without merit.

E.

Mr. Goldston asserts that Ms. Claiborne is liable for damages in the form of attorney fees and costs because the appeal was frivolous. Ms. Claiborne disagrees, responding that her appeal was not frivolous.

Tennessee Code Annotated section 27-1-122 provides for an award of damages, including attorney fees, when an appeal is determined to be frivolous. To find an appeal frivolous, the appeal must be wholly without merit and lacking in justiciable issues. *See Davis v. Gulf Ins. Group*, 546 S.W.2d 583, 586 (Tenn. 1977); *Indus. Dev. Bd. of Tullahoma v. Hancock*, 901 S.W.2d 382, 385 (Tenn. Ct. App. 1995). An appellate court's decision on this issue is discretionary, and this court is generally reluctant to award such damages because we do not want to discourage legitimate appeals. *Whalum v. Marshall*, 224 S.W.3d 169, 180-81 (Tenn. Ct. App. 2006). We respectfully deny Mr. Goldston's request for attorney fees on appeal in this case because Ms. Claiborne's appeal was not devoid of merit.

## V. CONCLUSION

We modify the judgment of the trial court to reflect an award of $68,138.88 to Mr. Goldston, reflecting the payment of the Y-12 mortgage and interest on that amount. The judgment of the trial court is affirmed as modified. The case is remanded for further proceedings as may be necessary. Costs of the appeal are taxed one half to the appellant, Kathryn M. Claiborne, and one half to the appellee, Larry W. Goldston.

_____
JOHN W. McCLARTY, JUDGE

-9-