# ADELE CHANCE v. GRETA D. GELDREICH et al. —337 S. W. (2d) 770.

Middle Section at Nashville.   March 7, 1959.

Certiorari Denied by Supreme Court September 9, 1960.

Joseph L. Lackey, Nashville, for complainant.

Denney & Leftwich, and Graham B. Boyce, Nashville, for defendants.

HUMPHREYS, J.   This is an appeal from a decree of the Chancery Court of Davidson County, dismissing appellant, Mrs. Adele Chance's suit seeking to remove a deed as a cloud upon her title and for damages, because she came into Court with unclean hands, and upon other grounds hereinafter discussed.

The facts upon which this case arose are as follow: In 1954, appellant, Mrs. Adele Chance, owned an apartment house under an unregistered deed from her mother, Mrs. Lucille Scott.  This apartment house was mortgaged for its full mortgage value of $5,500.  She also owed other debts.  That same year, pursuant to an agreement with defendants Richard Geldreich and his wife, Dr. Greta Geldreich, who were at that time tenants in an apartment in her apartment house, she had her mother convey the apartment house property to the Geldreichs, by warranty

deed, who secured thereon a G. I. full value mortgage loan of $9,800 (for which Richard Geldreich was authorized to apply) which they turned over to Mrs. Chance. Within ten days thereafter the Geldreichs deeded the property back to Mrs. Chance by deed in which Mrs. Chance assumed the mortgage debt. This deed was not recorded. As consideration for their part in this transaction the Geldreichs were to receive a year's free rent on the apartment they were then occupying. Approximately two years later, on November 12, 1956, the Geldreichs deeded the same property to the defendant Hartwell Fisher, the consideration being his assumption of the mortgage indebtedness which at that time amounted to approximately the full value of the property. The Geldreichs explained their action by showing that the mortgage indebtedness was outstanding on the property in their names alone, their deed to Mrs. Chance not being of record; that the payments on the mortgage were delinquent, and they were being threatened with foreclosure proceedings; and that on a prior occasion Mrs. Chance had stated to Dr. Greta Geldreich that her unrecorded deed had been destroyed and that she, Dr. Geldreich, could do as she pleased with the property if Dr. Geldreich would give her two or three hundred dollars which she needed quite badly at that time, and that Dr. Greta Geldrich had given her some money at that time.

All of the parties, including the Guaranty Mortgage Company through which the mortgage was arranged, were fully aware of the arrangement to refinance the property with the G. I. loan and were fully aware of Mrs. Chance's unrecorded deed thereto from the Geldreichs. Both the Geldreichs and Mrs. Chance had treated the property as belonging to Mrs. Chance after the loan

and reconveyance to Mrs. Chance, and after the conversation about the destruction of the deed. Defendant Fisher was fully advised before accepting his deed of the entire situation, particularly the fact, that Mrs. Chance had a deed from his grantors to the same property. In fact, Fisher secured possession of Mrs. Chance's deed from Mrs. Chance's mother, without Mrs. Chance's knowledge or consent and delivered it to his lawyers before the Geldreichs' deed was made to him.

On this state of facts, Mrs. Chance sued to have Fisher's deed removed as a cloud upon her title and for damages. Richard I. Geldreich confessed the cause but defendant Greta Geldreich answered and set up the facts above outlined and defended on the apparent ground the equities between the Geldreichs and complainant were equal, and that as between themselves and Fisher, they had explained the entire situation to him at the time, and that he had not paid them any money as consideration for their deed, simply assuming the outstanding indebtedness on the property.

Defendant Fisher defended upon the ground he was an innocent purchaser of the property.

The Chancellor did not sustain the plea of innocent purchaser but dismissed the bill holding that complainant had in effect sold the property to the Geldreichs by telling the defendant Greta Geldreich that her deed had been destroyed in a fire, and that defendant Geldreich could do as she pleased with the property. The Chancellor further held that Mrs. Chance was equitably estopped to assert title to the property. And that, since Mrs. Chance was responsible for the entire situation by her illegal conduct with respect to the G. I. mortgage, was guilty of

fraud in a transaction with her mother, had already realized the benefit from two loans on the property, and was a false witness, she should be repelled as a suitor coming into court with unclean hands.

Mrs. Adele Chance has appealed and assigned errors which we think will be met if we will apply the law to the facts as above found.

The only equitable principle to which the Chancellor's action in holding that the conduct of Mrs. Chance amounted in effect to a sale of the property to Mrs. Geldreich can be related is the maxim that equity regards and treats that as done, which, in good conscience, ought to be done. Pomeroy, in his magnificent work says: "that all kinds of equitable property, as distinguished from legal ownership are, with perhaps one or two particular exceptions, derived from this fruitful and most just principle." Pomeroy's Equity Jurisprudence (1886) sec. 366. But, can this maxim be applied under the facts of this case so as to create equitable ownership of the property in the Geldrichs? We think not. This for the reason that it is clear from the record that the Geldreichs themselves did not assume at any time after the conversation referred to that the property was theirs. When this transaction is examined it is found that Dr. Geldreich did not pay Mrs. Chance two or three hundred dollars as discussed, giving her only a small undetermined amount, and this was not given for the purpose of acquiring the property or any interest therein. Furthermore, Dr. Geldreich did not thereafter regard or treat the property as her own. In fact, Dr. Geldreich has not claimed to own any interest, legal or equitable, in the property since it was mortgaged, not even claiming this to defendant Fisher,

or in her answer. In this situation, there is nothing in the record to support the application of the above quoted maxim or any other principle of equity so as to bring about the result decreed by the Chancellor. We can do nothing but sustain the assignments of error of appellant insofar as they relate to the Chancellor's action in this regard. In this connection we should like to point out, however, that the appellant's assignment of error with respect to this aspect of the case, is not good insofar as it relies upon the statute of frauds. The statute of frauds has no application in a case where the facts require that an equitable title be found in a party on account of the maxim above referred to.

■■ We consider next the Chancellor's holding that Mrs. Chance was equitably estopped to assert title. There are two reasons why this holding of the Chancellor was erroneous. In the first place, estoppel was not pleaded by any of the defendants. It is fundamental that an estoppel can only be worked when set up in the pleading. See Gibson's Suits in Chancery, sec. 334, p. 7. The second reason why equitable estoppel is not applicable in this case is found in the very definition of an equitable estoppel. Gibson, in defining an equitable estoppel says:

"Whenever A, by acts, words, or silence, intentionally causes or permits B. to do a think he would not otherwise have done, it would be manifestly inequitable for A, by repudiating the very conduct by which he induced B. to act, and by setting up rights of his own, inconsistent with his said conduct, to compel B. to incur a loss by undoing the very thing A.'s conduct caused him to do. Courts of equity will not permit such inequitable action on A's part, and

will not allow him to set up any claims inconsistent with those acts, words, or silence, of his, which induced B. to do what he did. This doctrine of equity is termed estoppel.'' Gibson's Suits in Chancery, section 67 2nd Ed.

Upon examination it will be found that the doctrine is predicated upon overt action on the part of the party to be estopped which causes or permits the other party to do a thing he would not otherwise have done. An examination of the record in this case discloses it contains no overt acts of this character on the part of Mrs. Chance with respect to either the Geldreichs or defendant Fisher. Under this record it is clear that all of the parties were fully familar with all of the facts. Moreover, it does not appear that Mrs. Chance either by herself or through anyone acting for her, made any representations with respect to the title of the property to Fisher upon which he could or did rely. This of course is also true as between Mrs. Chance and Dr. Geldreich. For the two reasons here set forth we must hold there could be no equitable estoppel in the case.

This brings us to a consideration of the third basis of the Chancellor's decree which was that the bill should be dismissed because the complainant came into court with unclean hands. Unlike equitable estoppel, the requirement that a complainant come into equity with clean hands is one which can be enforced by the Chancellor regardless of the pleadings. It is a maxim and principle of adjudication which may be invoked by the Chancellor without regard to the attitude of the parties. Overton v. Lewis, 152 Tenn. 500, 279 S. W. 801. The Chancellor based his opinion that complainant came into

Court with unclean hands on certain propositions of fact which we shall discuss as we set them forth. The Chancellor's first factual basis for his holding was that Mrs. Chance's failure to record her deed was purposeful, and that this purpose was inimical to the interests of the Geldreichs. With respect to this we must say that, even if we agree with the Chancellor that Mrs. Chance's conduct was purposeful, under this record she had desisted in her purpose in this regard more than two months before the property was conveyed to defendant Fisher by the Geldreichs. In August of 1956, prior to the Geldreich deed in November, 1956, she mailed her unregistered deed to Mr. Greer, President of the Guaranty Mortgage Company, with whom she had done business, together with a blank check, with her request that he have the deed recorded. It does not appear that she was negligent in her choice of Mr. Greer to attend to this for her, although Mr. Greer failed to have the deed recorded. So, we are bound to hold that she had actually desisted from any wrongful purpose to withhold her deed from record, and that her conduct in this regard did not require that she be repelled from Court. The decree also suggests that (1) Mrs. Chance's hands are unclean because of some previous fraud in connection with the trade of a restaurant between herself and her mother; (2) because Mrs. Chance had already secured the benefit of two loans on the property involved; (3) that she received the proceeds of the G. I. loan, which was an illegal transaction; (4) that her testimony is at times evasive, untruthful and accusative. Even if we admit that all of these findings are more or less true, it does not follow that the maxim of unclean hands is applicable. With respect to this maxim, Gibson says:

"But the operation of the maxim is confined to misconduct connected with the particular matter in litigation; and does not extend to any misconduct, however gross, which is unconnected therewith, and with which the *defendant* is not concerned." (Emphasis supplied.) Gibson's Suits in Chancery, 1916 Ed. sec. 42.

Pomeroy points out another limitation upon this maxim as follows:

"When a court of equity is appealed to for relief it will not go outside of the subject-matter of the controversy, and make its interference to depend upon the character and conduct of the moving party in no way affecting the equitable right which he asserts against the defendant, or the relief which he demands." Pomeroy's Equity Jurisprudence, sec. 399.

This authority is applicable here. The G. I. loan transaction was between Mrs. Chance and the Geldreichs. The bill seeks to have the deed of Fisher removed as a cloud. The Geldreichs are not even necessary parties to this part of the suit. They were apparently brought before the Court to respond in damages for which both the Chancellor and this Court hold they are not liable. Additionally, Mrs. Chance is not undertaking to enforce any rights which arise with respect to the G. I. loan, or her agreement with the Geldreichs in regard thereto. She is undertaking to protect a legal title by an equitable remedy which operates directly between herself and the defendant Fisher, between whom there have been no illegal relationships of any character. So, if it were to be accepted that the G. I. loan transaction was of such an

illegal character as that it would bar one from coming into a court of equity in a suit in regard thereto, that would not prevent Mrs. Chance's having equitable relief in this case. However, as to the illegality of the G. I. loan, it appears that Mr. Greer, and, through him, the Guaranty Mortgage Company, were fully aware of the entire transaction and participated in it and assisted in bringing it about. It also appears that loans of this character are more or less ordinary. In addition, the arrangement between Mrs. Chance and the Geldreichs, whereby the defendant Richard I. Geldreich exercised a right he had under the G. I. loan, was supported by an adequate consideration, a year's free rent of an apartment. Agreements whereby one party employs his credit for another, upon a consideration are not necessarily illegal or inequitable between those parties. As to whether this transaction was illegal as between the parties thereto, the pleadings, the record and the briefs are silent. The limitations upon the maxim above set forth apply to the transaction between Mrs. Chance and her mother with respect to the restaurant. If there was any fraud therein it was far too remote and too unconnected with the immediate case to justify its use as a basis for its dismissal. What we have said also applies to the fact that Mrs. Chance received the benefit of two loans on the property. As to the Chancellor's finding that Mrs. Chance's testimony is evasive, untruthful and accusative, while we find that she did not display the candor and forthrightness of a good witness, we cannot find that she has so conducted herself as to lose her right to equitable relief. It is our conclusion the Chancellor was mistaken in his opinion and decree that the complainant is not entitled to have the deed from the Geldreichs to Fisher

removed as a cloud upon her title because she comes into court with unclean hands.

We do find however, that the Chancellor is correct in his finding and holding that this entire situation and the plight in which the Geldreichs found themselves, and the cause of their efforts to extricate themselves therefrom is due to the negligent, inequitable conduct of appellant Chance in the premises. Likewise, we find that the defendant Fisher's position is the more equitable one as between the appellant Chance and himself. In this situation the proper equitable maxim and principle applicable here is that "he who seeks equity must do equity." Gibson says of this maxim, "that in granting relief, a court of chancery will require of a complainant whatever the defendant may in good reason and good conscience, be entitled to in reference to the subject matter of the suit, although this requirement may be one the court would not otherwise enforce." The condition thus imposed on the complainant is, as it were, the price of the decree the court gives him. "Under this maxim, an equitable right may be secured to the defendant which could not be obtained by him in any other manner. One which he could not have secured by a suit brought for that purpose." Applying this maxim here we hold that appellant Chance is entitled to have the deed from the Geldreichs to appellant Fisher removed as a cloud upon her title. However, the defendant Fisher is entitled to, and is hereby granted an equitable lien upon said property, subject only to any outstanding recorded liens, for the full amount of money he has expended in reducing the outstanding loan on said property, or paid by way of taxes on said property, or in permanent improvements to said property, including the value of any

labor in making such permanent improvements to said property. Dr. Geldreich is entitled to and is hereby granted an equitable lien on said property, second to defendant Fisher's for such a part of the $850 which was borrowed from the First American National Bank as an F. H. A. improvement loan on said property while the property was outstanding in the Geldreich's name, and they were interested in reducing the mortgage payments thereon, as was expended in making permanent improvements on said property.

The case is remanded to the Chancery Court for such further references and orders, including orders of sale, as may be necessary to carry out this opinion and our decree thereon. The costs on appeal are divided between all the parties.

Hickerson and Shriver, JJ., concur.