IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
January 30, 2001 Session

## STEVEN H. REZBA v. BRIAN W. RANDOLPH

**Appeal from the Chancery Court for Williamson County**
**No. 26203     Jeffrey S. Bivins, Chancellor**

**No. M2000-01973-COA-R3-CV - Filed April 30, 2001**

Dr. Steven H. Rezba purchased the dental practice of Dr. Brian W. Randolph in April of 1996, paying some cash down and giving a promissory note for the balance. Dr. Rezba filed this action to rescind the contract claiming that Dr. Randolph had inflated his revenues by fraudulent practices, and Dr. Randolph counterclaimed for damages for breach of the contract. The Chancery Court of Williamson County denied Dr. Rezba's motion to amend to include a claim for damages and granted summary judgment to Dr. Randolph on all issues. We affirm.

**Tenn. R. App. Proc. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed and Remanded**

BEN H. CANTRELL, P.J., M.S., delivered the opinion of the court, in which WILLIAM C. KOCH, JR. and WILLIAM B. CAIN, JJ., joined.

Judy A. Oxford, Franklin, Tennessee, for the appellant, Steven H. Rezba.

James D. Kay, Jr. and John B. Enkema, Nashville, Tennessee, and W. Ray Culp, III, Lobelville, Tennessee, for the appellee, Brian W. Randolph.

**OPINION**

**I.**

On April 23, 1996, the parties entered into a sale agreement whereby Dr. Rezba agreed to purchase Dr. Randolph's dental practice located in Brentwood. Dr. Rezba agreed to pay $100,000 down and to execute a $70,000 note for the balance, and Dr. Randolph agreed to transfer to Dr. Rezba the goodwill, equipment, records, patient information, and certain leasehold improvements connected to the practice. The unpaid purchase price was to be secured by a security agreement covering Dr. Rezba's accounts receivable and the personal property involved in the sale. Dr. Randolph also agreed to lease the office to Dr. Rezba for one year with five one-year renewal

options. The purchase price was based on a represented gross intake of $260,000 for each of the 1994 and 1995 calendar years.

On April 29, 1999, Dr. Rezba sued Dr. Randolph to rescind the contract. The complaint contained allegations that Dr. Randolph defrauded insurance providers by doing unnecessary work on his patients who were covered by insurance. According to the complaint, only by these fraudulent, deceptive and immoral acts could Dr. Randolph sustain the gross revenues that became the basis for the sale price.

Dr. Randolph filed an answer denying the allegations in the complaint and a counterclaim for (1) damages for breach of contract, (2) a judgment for the balance on the note, (3) a writ of possession for the leased premises, (4) a declaratory judgment declaring the rights and obligations of the parties under the various agreements, and (5) prejudgment interest, attorney's fees, and costs.

After conducting some discovery Dr. Randolph filed a motion for summary judgment. The trial court overruled that motion, and Dr. Randolph filed a motion for a scheduling order, a motion to set the case for trial and a motion to compel the production of all the charts for patients who allegedly had had unnecessary work performed on their teeth. On March 8, 2000, the court set the case for August 9, 2000 and entered a scheduling order requiring all discovery to be completed by May 15, 2000. The court also ordered the plaintiff to produce for copying the charts for patients on whom Dr. Rezba relied to substantiate his claim of fraud and deceptive practices.

Dr. Randolph filed a second motion for summary judgment on May 3, 2000. Based primarily on Dr. Rezba's failure to comply with the discovery order, the motion also asserted that Dr. Rezba had identified only nine crowns in 1994 and five in 1995 as being unnecessary.

On June 2, 2000, Dr. Rezba filed a motion for leave to file an amended and supplemental complaint adding three new counts. The first count was for outrageous conduct based on allegations that Dr. Randolph had illegally entered the dentist office after hours and had copied Dr. Rezba's computer records containing his patient information. The second new count alleged that Dr. Randolph had violated a restrictive covenant in the purchase and sale contract by criticizing Dr. Rezba to Dr. Randolph's former patients. The third count alleged that Dr. Randolph had misrepresented the number of active patients he had prior to the sale. The amended and supplemental complaint also added a prayer for compensatory and punitive damages and attorney's fees.

On June 2, 2000, Dr. Randolph filed a supplemental memorandum in support of his motion for summary judgment. The memorandum asserted that Dr. Rezba had identified only three unnecessary procedures performed in 1994 and two in 1995. On June 5, 2000, Dr. Rezba struck his prior motion to file an amended and supplemental complaint. In its place he moved a second time to file an amended and supplemental complaint containing the same additional counts.

Dr. Randolph's motion for summary judgment on Dr. Rezba's complaint and Dr. Rezba's motion to file an amended and supplemental complaint were heard on June 12, 2000. The court overruled the motion to file an amended and supplemental complaint on the ground that it was filed too late. The court granted Dr. Randolph's motion for summary judgment. On July 12, 2000, the court entered a final order granting Dr. Randolph a judgment on the various elements of his counterclaim.

## II.
### THE MOTION TO AMEND

Rule 15.01 of the Tennessee Rules of Civil Procedure allows a party to amend its pleading once as a matter of course if no responsive pleading has been served. Otherwise the party must get the written consent of the adverse party or leave of court. *Id.* While the rule also says that leave should be freely given if justice so requires, the granting or denying of a motion to amend is within the sound discretion of the trial court and will be reversed only for an abuse of discretion. *Wilson v. Ricciardi*, 778 S.W.2d 450 (Tenn. Ct. App. 1989); *Merriman v. Smith*, 599 S.W.2d 548 (Tenn. Ct. App. 1980). Some relevant factors to be considered in deciding whether to grant a motion to amend a complaint are, "'undue delay in filing; lack of notice to the opposing party; bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment.'" *Welch v. Thuan*, 882 S.W.2d 792, 793 (Tenn. Ct. App. 1994)(quoting *Merriman v. Smith*, 599 S.W.2d 548, 559 (Tenn. Ct. App. 1979)).

We cannot say that the trial judge abused his discretion in denying the amendment. This case had been pending as an action for rescission for fourteen months when the motion was filed. A scheduling order entered in March of 2000 set the case for August 9 and required the end of discovery by May 15. When Dr. Rezba moved for the amendment Dr. Randolph's motion for summary judgment had been pending for approximately thirty days, and the proposed amendment set out completely different theories of liability, some of which depended on enforcement of the contract rather than rescinding it. While these inconsistent pleadings are allowed under Rule 8.05 of the Tennessee Rules of Civil Procedure, we think the trial judge was justified in denying the addition of the new theories by amendment. Discovery on the original claims was complete, the trial two months away, and the motion for summary judgment was pending. The amendment would surely have set off a new round of discovery and prolonged the dispute. *See Welch v. Thuan*, 882 S.W.2d 792 (Tenn. Ct. App. 1994).

## III.
### THE SUMMARY JUDGMENT

Under Rule 56, Tenn. R. Civ. P., the court may grant summary judgment to a party when there are no genuine issues of material facts relevant to the claim or defense and the moving party is entitled to a judgment as a matter of law on the undisputed facts. *Byrd v. Hall*, 847 S.W.2d 208 (Tenn. 1993). The moving party has the burden of showing that both conditions are satisfied. *Downen v. Allstate Ins. Co.*, 811 S.W.2d 523 (Tenn. 1991).

## A. THE RESCISSION CLAIM

After struggling through two sets of written interrogatories and two discovery depositions Dr. Randolph finally asked the court to require Dr. Rezba to produce a list of patients on whom unnecessary work had been done and to identify the teeth involved. The trial court granted the motion and Dr. Randolph was finally able to inspect the list. The list contained twenty-six names and involved thirty-eight crowns. After working over the list, Dr. Randolph was able to file his affidavit showing that there were only three names on the list who had teeth crowned in 1994 and two in 1995. This proof is undisputed by Dr. Rezba. Since the purchase price under the contract was based on the gross revenues for those two years, the other names on the list (many of whom did not have teeth crowned) are irrelevant.

Rescission of a contract is available only under the most demanding circumstances and is available only at the discretion of the trial judge. *Early v. Street*, 241 S.W.2d 531 (Tenn. 1951). The court's discretion should be exercised sparingly and rescission should be ordered only where actual fraud, accident, mistake, or insolvency justify it. *Spivey v. Roadman*, 6 Tenn. App. 442 (1927); *see also Vakil v. Idnani*, 748 S.W.2d 196 (Tenn. Ct. App. 1987). The proof to set aside an instrument must be clear, cogent, and convincing. *Myers v. Myers*, 891 S.W.2d 216 (Tenn. Ct. App. 1994). Only the court can actually order the equitable relief of rescission, even if the plaintiff is entitled to a jury trial on the fact questions. *See* 13 Am. Jur. 2d *Cancellation of Instruments* § 54.

The facts in this record are undisputed, and as a matter of law, those facts do not support an order of rescission. Five questionable procedures in a two year period, when Dr. Randolph had a patient base of more than 900, is too insignificant to substantially affect the gross income of the practice for those two years.

## B. THE COUNTERCLAIM

The facts are also undisputed that Dr. Rezba, relying on his right to rescind, repudiated the contract, discontinued the payments on the purchase money note, and quit paying the rent. As a matter of law, therefore, he breached the contract of sale and he was, at the time he quit making the required payments, in default on the note and the lease. *Freytag v. Crass*, 913 S.W.2d 171 (Tenn. Ct. App. 1995). The note provided that in the event of default, the note would immediately become due and payable and Dr. Rezba would pay all reasonable attorney's fees and costs of collection. The lease provided that if Dr. Rezba failed to perform any of the covenants, agreements, or obligations in the lease, the lease would become null and void, and, in addition to the right to reenter, Dr. Randolph would be entitled to the unpaid balance of the rent for the full term of the lease and to recover the costs and attorney's fees incurred in enforcing his rights under the lease. The security agreement covering Dr. Rezba's accounts receivable and other personal property also provided for attorney's fees if Dr. Randolph had to exercise the rights given to him under the agreement.

The final judgment included the following:

1) Damages of Thirty Six Thousand Five Hundred Dollars ($36,500.00) for payment of the Promissory Note;

2) Rent pursuant to the Lease in the amount of Fifteen Thousand Two Hundred and Fifty Three Dollars ($15,253.00)(rent of $1,100.00 per month from May 1, 1999 to June 26, 2000);

3) A writ of immediate possession of the leased premises located at 7110 Frierson Place, Brentwood, Tennessee ("Leased Premises");

4) A writ of immediate possession of the accounts receivable and collateral listed in Exhibit B to the Counterclaim which is attached to this Order ("Collateral");

5) An award of attorney's fees, costs of collection and expenses in the amount of $30,000;

6) Prejudgment interest in the amount of Three Thousand Six Hundred and Fifty Dollars ($3,650.00)(10% interest for a year on the $36,500.00 balance on the Promissory Note which has been owed since April, 1999).

**1.**

Dr. Rezba argues on appeal that the facts are in dispute on his defenses of unclean hands and breach of the consulting and non-compete agreement. We fail to find where Dr. Rezba raised the defense of breach of the consulting and non-compete agreement in his answer to the counterclaim. He did raise the defense of unclean hands, but he did not set forth the facts on which the defense rested, as required in Rule 8.03, Tenn. R. Civ. P. The facts he relies on in his brief are the facts surrounding Dr. Randolph's illegal entry into Dr. Rezba's office on one occasion, his filing of fraudulent insurance claims (other than the alleged unnecessary crowns), and his unwelcome presence on the premises on other occasions. Dr. Rezba does not allege that he was damaged by these events in any monetary sense.

The defense of unclean hands is subject to limitations; it must be confined to the particular matter in litigation and the conduct complained of must have injured the party making the complaint. *See Nolen v. Witherspoon*, 187 S.W.2d 14 (Tenn. 1945). Even a willful and reprehensible act will not be a defense if it does not "'in some measure affect the equitable relations subsisting between the parties . . . .'" *Greer v. Shelby Mutual Ins. Co.*, 659 S.W.2d 627 (Tenn. Ct. App. 1983)(quoting *Overton v. Lewis*, 152 Tenn. 500, 279 S.W. 801 (1926)). The conduct Dr. Rezba describes in his brief is not connected to the original transaction at all, and he does not describe how he has been damaged by the conduct nor how it affected the equitable relations between the parties. Therefore, it does not amount to an unclean hands defense.

**2.**

Dr. Rezba also asserts that the amount of the judgment awarded to Dr. Randolph was not justified by the record. We will address the attorney's fees in a subsequent section of this opinion, but as to the other monetary awards, we think the judgments were correct. The evidence concerning

the unpaid balance on the promissory note was not disputed; nor was the amount of the lease payments. The judgment for the lease payments only covered the time up to the date the judgment was entered, and Dr. Rezba was still in possession of the premises. Therefore, there is no dispute as to the amounts due on the note and the lease.

The trial judge awarded prejudgment interest on the balance due on the note. Tenn. Code Ann. § 47-14-123 allows judges and juries to award prejudgment interest "as an element of, or in the nature of, damages" at a rate not to exceed ten percent per annum. While the allowance of prejudgment interest is not a matter of right, *B.F. Myers & Son v. Evans*, 612 S.W.2d 912 (Tenn. Ct. App. 1980), we have now held that the trial court should award prejudgment interest whenever it will more fully compensate the claimant for the loss of use of its funds. *See Scholz v. S.B. International, Inc.*, _____ S.W.3d _____ (Tenn. Ct. App. 2000).

**3.**

Dr. Rezba argues on appeal that the only proper attorney's fees to be awarded to Dr. Randolph would be the fees incurred in the collection of the note. Dr. Randolph argues that the trial court erred in failing to allow the full amount of the fees he incurred in this litigation.

Under the American Rule a party is not entitled to recover attorney's fees as a part of the costs unless they are expressly provided for in an agreement, or by statute, or by a well-recognized ground of equity. *State ex rel Orr v. Thomas*, 585 S.W.2d 606 (Tenn. 1979). In this case the note, the lease, and the security agreement all provided for the collection of attorney's fees in the event Dr. Randolph had to resort to the courts to enforce the rights given him under the various instruments. It is true that the sale agreement itself did not have such a provision, and we concede that the total fee for representing Dr. Randolph in the litigation should be apportioned to the controversies where the parties agreed he would be entitled to collect his attorney's fees. *Hogan v. Coyne International Enterprises Corp.*, 996 S.W.2d 195 (Tenn. Ct. App. 1998)). But it appears to us that the rescission claim necessarily involved the other three agreements because the rescission claim was in fact an effort to nullify the note, the lease, and the security agreement. The trial judge disallowed recovery for a portion of the fees billed to Dr. Randolph. In view of the factors to be considered in setting a reasonable fee, *see United Medical Corp. v. Hohenwald Bank and Trust Co.*, 703 S.W.2d 133 (Tenn. 1986), we think the trial judge's action should be affirmed.

**4.**

Finally, Dr. Rezba asserts that the trial judge should not have awarded the collateral described in the security agreement to Dr. Randolph. The argument is that the award will overcompensate Dr. Randolph because the prior payments made on the note, the payments paid into court, and the value of the collateral greatly exceed the amount of the judgments.

We think Dr. Rezba misconstrues the effect of the award of the collateral to Dr. Randolph. The purpose of pledging the collateral was to secure the payment of the note. The collateral will

have to be sold following the procedures prescribed in Tenn. Code Ann. § 47-9-501, et seq., and Dr. Rezba will be entitled to any surplus after the expenses of sale and the secured debt have been paid. Tenn. Code Ann. § 47-9-504(1)(a)(1)(b) and (2).  Therefore, under the trial court's judgment, Dr. Randolph will not be entitled to a windfall.

Dr. Rezba also asserts that he is able to pay the judgments, and he offers that fact as an additional reason why Dr. Randolph should not have been awarded the collateral.  Tenn. Code Ann. § 47-9-506 gives the debtor the right to redeem the collateral at any time before the secured party has disposed of it or has contracted to sell it.  Dr. Rezba is entitled to take advantage of the rights given him under the Code.

The judgment of the court below is affirmed and the cause remanded to the Chancery Court of Williamson County for any further proceedings necessary.  Tax the costs on appeal to the appellant, Dr. Steven H. Rezba.

_____
BEN H. CANTRELL, PRESIDING JUDGE, M.S.