IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
Assigned On Briefs November 21, 2007

**TERRY C. CLEMONS v. CHUCK'S MARINE, ET AL.**

**Direct Appeal from the Chancery Court for Shelby County**
**No. Ch-04-2060-2      Arnold B. Goldin, Chancellor**

**No. W2007-00098-COA-R3-CV - March 13, 2008**

The trial court determined Defendant orally agreed to assume outstanding debt on personal property offered for consignment sales. The trial court further determined Defendant was equitably estopped from asserting the Statute of Frauds as a defense. We reverse.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Reversed; and Remanded**

DAVID R. FARMER, J., delivered the opinion of the court, in which HOLLY M. KIRBY, J., joined. W. FRANK CRAWFORD, J., not participating.

James O. Marty, Memphis, Tennessee, for the appellant, Teresa Thornton.

Darrell J. O'Neal, Memphis, Tennessee, for the appellee, Terry C. Clemons.

**OPINION**

This dispute arises from Plaintiff/Appellee Terry Clemons' (Mr. Clemons) assertion that Defendant/Appellant Teresa Thornton (Ms. Thornton) orally agreed to pay the outstanding debt on a boat, motor and boat trailer (collectively, "the boat package"), and that Ms. Thornton is equitably estopped from asserting the Statute of Frauds as a defense. Chuck's Marine, an original Defendant, has been dismissed from this action for lack of personal jurisdiction. Pursuant to an agreed order, the trial court also dismissed Ms. Thornton's counter-claim against Mr. Clemons for recovery of amounts allegedly paid on his behalf. The trial court's entry of judgment against Ms. Thornton in favor of Mr. Clemons is the only order appealed.

It is undisputed that, in March 2000, Mr. Clemons purchased the boat package on behalf of his brother, Gregory Thornton (Mr. Thornton), Ms. Thornton's husband. The security agreement entered into by Mr. Clemons recited the amount financed as $21,493.30 with an annual percentage rate of 11.25 percent. The term of the finance agreement was 180 months, resulting in a total sale price in the amount of $46,701.40. The security agreement was assigned to Bombardier Capital. According to the statement of evidence submitted by Mr. Clemons and approved by the trial court,

after Mr. Clemons signed the written boat purchase contract, he and Mr. Thornton entered into a verbal agreement that Mr. Thornton would insure the boat, house it, and make all payments on the boat. Mr. Thornton secured the necessary insurance as "buyer" of the boat. Mr. Thornton also made the required payments on the boat until he died in an automobile accident in June 2000. According to the statement of the evidence, Mr. Clemons "assumed the responsibility to sell the boat . . . but . . . stopped" because Ms. Thornton told him she intended to keep the boat and "would assume responsibility for care and making payments on the boat." Ms. Thornton made the payments, but in August 2001 apparently changed her mind and decided to sell the boat.

On August 8, 2001, Mr. Clemons entered into a consignment and sales agreement with Chuck's Marine to sell the boat at auction. On the sales agreement, Mr. Clemons noted:

> It is my responsibility to pay the difference between sale price at auction and payoff. Teresa told me (Terry Clemons) that she would pay the difference on the boat to pay it off.

Following the auction sale sometime in 2002, in May 2002 Chuck's Marine issued a check to Ms. Thornton in the amount of $6512. Ms. Thornton continued to make payments on the outstanding debt on the boat until August 2004. The parties do not dispute that Ms. Thornton made payments totaling $9,314.78, although her motivation for making the payments is disputed.

In October 2004, Mr. Clemons filed an action in the Shelby County Chancery Court asserting Mr. Thornton had breached the parties' oral contract that she would assume responsibility for the debt on the boat and "Bear Trailer Identification #41YAB2015Y1004898." Mr. Clemons further asserted that Defendant Chuck's Marine had retained the boat trailer, referred to by Mr. Clemons as belonging to "Plaintiff." In his complaint, Mr. Clemons asserted he was entitled to possession of the trailer. According to Ms. Thornton and not disputed by Mr. Clemons, in September 2006, Bombardier Capital sued Mr. Clemons for non-payment in the amount of $21,464.73.

There is no dispute that, absent any equitable defense, the Statute of Frauds as codified at Tennessee Code Annotated § 29-2-101(a)(2000) would bar enforcement of the alleged oral agreement by Ms. Thornton to assume the liability for Mr. Clemons' debt. The trial court, however, found that an oral contract existed between the parties and determined that Ms. Thornton was estopped from asserting the Statute of Frauds as a defense under the doctrines of equitable estoppel and equitable ownership. The trial court awarded Mr. Clemons a judgment in the amount of $22,145.48. Final judgment was entered in the matter on January 24, 2008, and this appeal ensued. On appeal, Ms. Thornton asserts the trial court erred by finding that an oral contract existed; by determining she was estopped from asserting the Statute of Frauds as a defense; and by failing to allow her a credit for payments made on the boat package. We reverse.

***Standard of Review***

We review the trial court's findings of fact *de novo*, with a presumption of correctness. Tenn. R. App. P. 13(d); *Berryhill v. Rhodes*, 21 S.W.3d 188, 190 (Tenn. 2000). We will not reverse the trial court's factual findings unless they are contrary to the preponderance of the evidence. *Id.* Insofar as the trial court's determinations are based on its assessment of witness credibility, appellate courts will not re-evaluate that assessment absent clear and convincing evidence to the contrary. *Jones v. Garrett*, 92 S.W.3d 835, 838 (Tenn. 2002). Our review of the trial court's conclusions on matters of law, however, is *de novo* with no presumption of correctness. *Taylor v. Fezell*, 158 S.W.3d 352, 357 (Tenn. 2005). We likewise review the trial court's application of the law to the facts *de novo*, with no presumption of correctness. *State v. Thacker*, 164 S.W.3d 208, 248 (Tenn. 2005).

*Analysis*

We begin our analysis of the issues presented by noting that this is not an action against Mr. Thornton's estate seeking to enforce Mr. Thornton's alleged agreement to make the payments on the boat package. Rather, Mr. Clemons asserts that Ms. Thornton orally contracted to assume his debt to Bombardier Capital. Additionally, Mr. Clemons does not assert that this action would not be barred by the Statute of Frauds absent application of the doctrine of equitable estoppel.[1] We also note that no transcript is included in the record on appeal, although the record contains a brief statement of the evidence. Additionally, the record appears to contain some, but not all, of the exhibits offered into evidence in the trial court.

Under the Statute of Frauds,

> [n]o action shall be brought . . . [t]o charge the defendant upon any special promise to answer for the debt, default, or miscarriage of another person . . . unless the promise or agreement, upon which such action shall be brought, or some memorandum or note thereof, shall be in writing, and signed by the party to be charged therewith, or some other person lawfully authorized by such party.

Tenn. Code Ann. 29-2-101(a)(2)(5)(2000 & Supp. 2007). The statute's requirement that certain types of contracts be in writing serves three purposes. First, it seeks "to avoid perjury on the one hand and fraud on the other[.]" *Price v. Tenn. Prods. & Chem. Corp.*, 385 S.W.2d 301, 308 (Tenn. Ct. App. 1964)(citations omitted). Second, it seeks to avoid misunderstandings about the terms and nature of a contract. *Cunningham v. Lester*, 138 S.W.3d 877, 880 (Tenn. Ct. App. 2003). Third, it seeks to "avoid basing certain types of agreements on faulty memories." *GRW Enters., Inc. v. Davis*, 797 S.W.2d 606, 611 (Tenn. Ct .App. 1990).

Although the courts construe and adhere to the statute to accomplish these purposes, the statute "should not be used to avoid contracts or to 'grant a privilege to a person to refuse to perform

---

[1] The trial court's order also recited the doctrine of equitable title as removing this case from the Statute of Frauds. Based on the record before us, we cannot determine that title to the boat was an adjudicated issue in this case, or that either party asserted equitable title.

what he has agreed to do.'" *Id.* (quoting *Cobble v. Langford*, 230 S.W.2d 194, 196 (Tenn. 1950)). Therefore, the courts have recognized the doctrine of equitable estoppel as an exception to the statute. *Id.* (citing *Daugherty v. Toomey*, 222 S.W.2d 197, 199 (Tenn. 1949); *Beazley v. Turgeon*, 772 S.W.2d 53, 58 (Tenn. Ct. App. 1988). The doctrine of equitable estoppel may be used to take an oral contract out of the statute in exceptional cases where enforcement "would make [the statute] an instrument of hardship and oppression, verging on actual fraud." *Baliles v. Cities Serv. Co.*, 578 S.W.2d 621, 624 (Tenn. 1979). The Tennessee Supreme Court has opined:

> [e]quitable estoppel, in the modern sense, arises from the "conduct" of the party, using that word in its broadest meaning, as including his spoken or written words, his positive acts, and his silence or negative omission to do any thing. Its foundation is justice and good conscience. Its object is to prevent the unconscientious and inequitable assertion or enforcement of claims or rights which might have existed, or been enforceable by other rules of law, unless prevented by an estoppel; and its practical effect is, from motives of equity and fair dealing, to create and vest opposing rights in the party who obtains the benefit of the estoppel.

*Id.* (quoting *Evans v. Belmont Land Co.*, 92 Tenn. 348, 365, 21 S.W. 670, 673-674 (1893)). The doctrine of equitable estoppel is "predicated upon overt action on the part of the party to be estopped which causes or permits the other party to do a thing he would not otherwise have done." *Chance v. Geldreich*, 337 S.W.2d 770, 773(Tenn. Ct. App. 1959).

In this case, we are compelled to reverse the Chancellor for two reasons. First, although Ms. Thornton made a number of payments on the boat package, we find no evidence of an oral contract to assume Mr. Clemons' debt. A party seeking to enforce an oral contract must demonstrate that the parties mutually assented to the essential terms of the contract. *Burton v. Warren Farmers Co-op.*, 129 S.W.3d 513, 521 (Tenn. Ct. App. 2002). These terms must be sufficiently definite to be enforceable. *Id.* Further, although assent may be demonstrated by a party's course of conduct, it cannot be inferred from the unilateral acts of one party or "rest solely on the uncommunicated intentions or states of mind of the contracting parties." *Id.* The essential terms of an agreement to lend or to continue to lend money include the amount and duration of the loan, the applicable interest rate, and the collateral securing the loan. *Jamestowne on Signal, Inc. v. First Federal Sav. & Loan Assoc.*, 807 S.W.2d 559, 565 (Tenn. Ct. App. 1990). Accordingly, it follows that a party seeking to enforce an alleged oral contract to assume that party's debt must demonstrate that the party charged was made aware of the essential terms of the debt to be incurred.

In this case, there is simply nothing in the record to demonstrate that Ms. Thornton agreed to assume a debt in excess of $40,000 over a course of fifteen years. There is nothing in the record, moreover, to demonstrate that Ms. Thornton was ever aware of the terms of the financing agreement with Bombardier Capital. Additionally, the record is ambiguous with respect to the components of the boat package for which Mr. Clemons asserts Ms. Thornton agreed to assume the debt. The financing agreement included the boat, a boat motor and a boat trailer. In his complaint, however, Mr. Clemons claimed ownership of the boat trailer. Additionally, the only evidence in the record

that suggests that Ms. Thornton agreed to assume the total remaining debt on the boat after auction is Mr. Clemons notation on the consignment sales agreement.

Second, even if an oral agreement existed between the parties, the doctrine of equitable estoppel does not take this case out of the Statute of Frauds. There is nothing to demonstrate that any action on the part of Ms. Thornton caused Mr. Clemons to do anything he otherwise would not have done. Mr. Clemons incurred the debt on the boat in exchange for an alleged oral agreement from Mr. Thornton. His liability was not predicated on any act of Ms. Thornton. Mr. Clemons has not demonstrated that he changed his position in reliance on any act or agreement of Ms. Thornton. This is not an exceptional case where enforcement of the Statute of Frauds would result in the perpetration of a virtual fraud.

Although we are not insensitive to the fact that Mr. Clemons incurred this debt in order to purchase a boat on behalf of his brother, this case, as reflected by the record before us, is a matter of "he said - she said." There is no evidence of mutual assent to essential terms sufficient to demonstrate an enforceable oral contract. Additionally, any alleged after-the-fact agreement by Ms. Thornton to assume the debt incurred by Mr. Clemons did not induce Mr. Clemons to do or refrain from doing anything that would have altered his liability for the debt to Bombardier Capital. Thus, the doctrine of equitable estoppel would not remove this case from the Statute of Frauds.

### *Holding*

In light of the foregoing, we reverse the judgment of the trial court. Costs of this appeal are taxed to the Appellee, Terry C. Clemons.

_____
DAVID R. FARMER, JUDGE